PUTNAM TOOL COMPANY *vs.* FITCHBURG MUTUAL FIRE INSURANCE COMPANY.

Worcester. Oct. 3. — Nov. 23, 1887. C. ALLEN & KNOWLTON, JJ., absent.

If, by the terms of a policy of insurance against loss by fire, the policy is to be void on the removal of the property insured without the written assent of the company issuing the policy, an agent of the company has no power by an oral agreement to waive this provision.

A policy of insurance against loss by fire contained a provision that the policy should be void on the removal of the property insured without the written assent of the company issuing the policy. The property insured was removed without such assent, and was afterwards destroyed by fire. After the fire, and when the officers of the company knew of the removal, they met the adjusters of the various companies in which the property was insured. The amount of the loss was discussed at this meeting, and a reduction of the sum covering the loss was agreed to by the insured, on the supposition that the company issuing the policy in question would pay its share of the loss. Subsequently the president of the company said that the loss would have been paid if the amount insured by his company had been no greater than that of other companies. *Held*, in an action on the policy, that the evidence was not sufficient to entitle the plaintiff to go to the jury on the question whether the officers of the company had waived the provision in the policy, or were estopped to claim the benefit of it.

CONTRACT upon a policy of insurance, dated January 15, 1885, in the form prescribed by the Pub. Sts. c. 119, § 139, issued by the defendant to the plaintiff, and insuring it for the term of one year against loss by fire, to the amount of $2000, " on patterns contained in storehouse of Putnam Machine Company." By the terms of the policy it was to be void if, " without the assent in writing or in print of the company, . . . . the said property shall be removed." The case was sent to an auditor, who found the following facts :

The patterns when insured were on the premises of the Putnam Machine Company. About May 1, 1885, they were removed from there to the storehouse of a manufacturer in another part of the city. On October 16, 1885, they were injured by fire, and the amount of the loss was $3482.43.

There was no evidence that either the company, or any person acting or claiming to act in its behalf, assented in writing to the removal of the patterns. The plaintiff contended that it obtained a verbal or oral assent to said removal, and a waiver of the written assent called for by the contract. On this point the facts were as follows : The insurance was effected through Lockey and Allison, a firm of insurance agents doing business in Fitchburg, having a place of business not connected with the office of the defendant company, and acting in a similar capacity for six other mutual insurance companies and for several stock companies. Lockey and Allison were supplied from the office of the defendant company with a calendar, on which they were described as agents of the defendant company, and which was used by them as an advertisement, with the knowledge and consent of the defendant. The defendant supplied Lockey and Allison with blank applications, which were filled out by them, signed by the persons seeking insurance, and returned to the office of the company. If satisfactory to the company, a policy was made by the company and sent to Lockey and Allison ; and they were authorized to receive the premiums, and settled with the company monthly. The rates were not made up by Lockey and Allison, but by the company.

The practice was, when there was any change in the policy, for the agent to send the policy, with an indorsement in writing of the change, to the company for its consent. Slight changes had

sometimes been made by these agents, in writing, on the policy, which were afterwards ratified by the company, not, however, changing the substance of the contract, but correcting mistakes. As when a policy was incorrectly made payable to a bank, or when it was made payable to the insured, and should have been made payable to a savings bank. Such a change as the removal of the property from one location to another would ordinarily have been indorsed in writing by these agents, and taken to the company for their consent.

The risk was no greater where the property was burnt than at the place of its location when insured, and no additional premium would have been required by the company if it had been asked to consent to the removal.

Henry Allison, in his examination in chief, testified as follows: "Mr. Putnam came to me soon after the annual meeting of the Putnam Machine Company, April 8, 1885. He said they were not going to have castings made by the Putnam Machine Company, but had arranged with L. H. Goodnow. He said they should move the patterns to the storehouse over the office of Goodnow. We knew where it was. I said, 'All right, go ahead and move the patterns, I will take notice for the company; bring in your policies and have them indorsed. I do not remember about the rate, whether it is the same. I will come down and see whether it is necessary to make any change in the rate.' Nothing further was said, before the fire. He did not bring in the policies, and there was no indorsement permitting the removal."

This testimony was not substantially changed on cross-examination, but the witness added, that he did not notify the insurance company of the removal till after the fire, and that the reason he did not was because he forgot it.

George E. Putnam, the treasurer of the plaintiff, testified: "About May 1, I told Mr. Allison we were going to change our patterns to Goodnow's. He said, 'All right, go ahead and remove the patterns, and I will accept notice for the companies. Bring in your policies, and I will have them indorsed, and I will go down and see if there will be any change in the rate.' I did not take the policies to the office, and did not think of it after that, before the fire. I supposed Allison had the power to assent

to the removal. Did not know the difference between a stock and mutual company as to power of an agent."

Immediately after the fire, the defendant was notified of the loss and of the facts as to the removal of the property, as above set forth, and afterwards the officers of the company met the adjusters of the various companies in which the property was insured. At this meeting the amount of the loss was discussed, and a reduction of the sum covering the loss was agreed to by the plaintiff, on the supposition that the defendant company would pay its share of the loss. The president of the defendant company, in conversation with Allison at one time, and with Putnam, for the plaintiffs, at another time, on being told that the other companies that had insured had paid their share, said that his company would have done so if the amount of their insurance had been no greater than that of the other companies.

The defendant company never waived its right to rely on the clause in their policy as to removal of goods, unless the foregoing facts constitute such waiver. The defendant had no knowledge that the property insured had been removed until after the fire.

The auditor found that Lockey and Allison were not authorized to assent to the removal of the property; that the defendant did not assent to its removal in writing, or otherwise; and that the policy was void, and the plaintiff could not recover.

At the trial in the Superior Court, before *Pitman*, J., the plaintiff offered to prove all the facts stated in the auditor's report, except his finding as to the authority of Lockey and Allison, and also offered to prove the following additional facts: At the time of his conversation with Allison, Putnam, the plaintiff's treasurer, believed that Lockey and Allison were the agents of the defendant, having authority to give the plaintiff permission to remove the insured property, and in removing said property he acted on said belief. The plaintiff asked to be allowed to go to the jury upon the questions involved.

The judge ruled that the jury would not be warranted in finding a verdict for the plaintiff; and directed a verdict for the defendant. The plaintiff alleged exceptions.

*F. P. Goulding*, for the plaintiff.

*H. C. Hartwell*, for the defendant.

W. ALLEN, J.   Lockey and Allison were special agents for the defendant, to receive and forward to it applications for insurance, and to receive from it and deliver to the parties policies of insurance, and to receive the premiums thereon.   They were not authorized to make or to vary contracts of insurance.   The word "agents," printed on the calendar furnished to them by the defendant, does not imply more than this; but if it were held to be an advertisement of them as general agents, it would not import authority in them to waive the express provision of the contract that notice of removal should be given in writing. *Kyte* v. *Commercial Assurance Co.* 144 Mass. 43, and cases cited. *Eastern Railroad* v. *Relief Ins. Co.* 105 Mass. 570.

It is not stated in the auditor's report that the officers of the defendant did anything at the meeting of the adjusters of the companies in which the property was insured which would amount to a waiver of the provision in the policy, or estop the defendant from claiming the benefit of it.   It is found that the amount of the loss was discussed at the meeting, and that the plaintiff agreed to a reduction on the supposition that the defendant would pay its share of the loss; but it is not found that the defendant's officers took part in the discussion, or knew that the plaintiff supposed that the defendant would pay its proportion of the loss, or said or did anything to create that supposition.   No facts are found, and none can be inferred, which raise the question whether the officers had at that time authority expressly or by their acts to waive the provision.

*Exceptions overruled.*